IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENDA J. MASON,                    §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §    CIVIL ACTION H-08-3198
                                    §
POSTMASTER GENERAL JOHN E.          §
POTTER,                             §
                                    §
            Defendant.              §

**OPINION AND ORDER OF SUMMARY JUDGMENT**

Pending before the Court in the above referenced action, alleging discrimination in employment and hostile work environment under Title VII, 42 U.S.C. § 2000e, *et seq.*, based on Plaintiff Brenda J. Mason's "mental stress" disability, are Defendant Postmaster General John E. Potter's motion for summary judgment (instrument #16) and motion to strike Plaintiff Brenda J. Mason's Response Exhibits "B"-"M"[1] (#24).

After careful review of the motion, Plaintiff's response, Defendant's reply, and the relevant law, for reasons stated below the Court concludes that the motion to strike and the motion for summary judgment should be granted.

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery

---

[1] Plaintiff's response was first filed without exhibits (#20) and again with exhibits (#22).

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant needs only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must go beyond the pleadings and come forward with evidence such that a reasonable party could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; Fed. R. Civ. P. 56. The non-movant by her own affidavits or by depositions, answers to interrogatories or admissions on file "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable

juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).  Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007).  Conjecture, conclusory allegations, unsubstantiated assertions, and speculation are not adequate to satisfy the non-movant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).  "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).  Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).  Rule 56 "'does not impose on the district court a duty to sift through the record in search

of evidence to support a party's opposition to summary judgment.'" *Woods v. Potter*, No. 4:06-CV-525-Y, 2008 WL 1869272, *4 (N.D. Tex. Apr. 28, 2008), *quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Rather the parties should "'identify specific evidence in the record, and . . . articulate in the 'precise manner' in which that evidence support[s] their claim.'"  *Id., citing Forsyth v. Barr*. 19 F.3d1527, 1537 (5th Cir. 1994).

**RELEVANT LAW**

**Title VII**

Mental stress is not a class protected under Title VII.  Title VII expressly provides that federal employees "shall be made free from any discrimination based upon race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16)(a).  Although Plaintiff identifies herself as an African American, female box section clerk for the Postal Service from 1998 to the present, Plaintiff clearly asserts that her claim is for discrimination based on mental disability, i.e., emotional distress caused by a conflict with her supervisor, Dorothy  Demouy.   Therefore she fails to state a cognizable claim and cannot make a *prima facie* case under Title VII, which expressly protects employees from discrimination based only on "race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).

**Rehabilitation Act**

Plaintiff claims she was discriminated against based upon a mental disability.  Although her complaint does not plead a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, because the Equal Employment Opportunity Commission ("EEOC") addressed her grievance under that statute during administrative review and because Defendant's motion examines her claims under that statute, the Court will do the same.

The Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 Fed. Appx. 254, 258 (5th Cir. 2008), *citing Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

For a disability claim seeking monetary relief brought by a federal employee, Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, is the exclusive avenue.  *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 12 n.1 (1st Cir. 2004); *Pinkerton v. Spellings*, 529 F.3d 513, 517 (5th Cir. 2008). *See* 29 U.S.C. § 794(d)("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance . . . or activity conducted by the United States Postal Service.").

Pursuant to Section 501(g), 29 U.S.C. § 791(g),[2] the standards for determining a violation of the Rehabilitation Act are the same as those for a violation of the ADA. *See* 42 U.S.C. § 94(d) and 42 U.S.C. §12101, *et seq.; Pinkerton v. Spellings*, 529 F.3d 513, 516-17 (5th Cir. 2008), *citing Lane v. Pena*, 518 U.S. 187, 193-94 (1996)(Congress waived the government's sovereign immunity from monetary claims brought under § 501, while immunity is not waived for § 504, so while federal employees may sue under both statutes, they can recover monetary relief only under § 501). Thus the Court will review the factual allegations in Plaintiff's complaint and the summary judgment submissions to determine whether her claim, as if properly brought under the Rehabilitation Act, survives for trial.

There are two types of claims under the ADA and Rehabilitation Act. First, Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a "qualified individual with a disability" because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Second, Section 12112(b)(5)(a) states that the term, "discriminate," includes "not

---

[2] Section 791(g) provides, "The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act . . . ."

making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."

The burden-shifting evidentiary framework for circumstantial evidence established *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to claims for disability discrimination under the Rehabilitation Act. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). A plaintiff must first make a *prima facie* case of a Rehabilitation Act violation by establishing that (1) she has a "disability," has a record of having a disability, or is regarded as disabled[3]; (2) she is "qualified" for her position; (3) she worked for a program or activity receiving Federal financial assistance; and (4) suffered an adverse employment action based solely on her disability or the perception of her disability.

---

[3] Having a record of impairment means the plaintiff has a history of, or has been misclassified as having, a mental or physical impairment that "substantially limits one or more major life activities." *Hileman v. City of Dallas, Texas*, 115 F.3d 352, 353 (5th Cir. 1997). To demonstrate that he was regarded as having such an impairment a plaintiff must show that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Kemp v. Holder*, 610 F.3d 231, 237 (5th Cir. 2010), *quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). There is no claim in this action that Plaintiff had a record of impairment or was "regarded as" having an impairment.

*McKay v. Johanns*, 265 Fed. Appx. 267, 268 (5th Cir. 2008); *Hileman*, 115 F.3d at 353.

If the plaintiff makes a *prima facie* case, the burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *EEOC v. Chevron Phillips Chemical Co., L.P.,* 570 F.3d 606, 615 (5th Cir. 2009). If the employer meets this burden, the framework falls away and the issue becomes discrimination *vel non. Id., citing Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). The plaintiff must then offer sufficient evidence to raise a genuine issue of material fact as to whether that articulated reason is a mere pretext for discrimination, or while the articulate reason is true, it is only one of the reasons for the employer's conduct and that discrimination was a motivating factor for the adverse employment decision. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). To determine whether the plaintiff is "otherwise qualified" for the job, the court must first decide whether the plaintiff can perform the core functions of the job; if not, the court must determine whether a reasonable accommodation

would enable the employee to do so.  *Chandler* v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1983), *cert. denied*, 511 U.S. 1011 (1994). A covered employer must provide reasonable accommodations to an "otherwise qualified" person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A).  The plaintiff bears the burden of requesting reasonable accommodations.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).  "[W]here the disability, resulting limitations, and necessary reasonable accommodation are not open, obvious and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations."  *EEOC v. Chevron Phillips Chemical Co., LP,* 570 F.3d  606, 621 (5th Cir. 2009), *citing Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996).

A disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."[4]  To state a claim under subsection

---

[4] Courts look to two possible authorities for interpreting the terms of § 12101:  the regulations interpreting the Rehabilitation Act of 1973, 87 Stat. 361, as amended, 29 U.S.C. § 706(8)(B)(1988), and the EEOC regulations construing the ADA.  *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 614 n.4 (5th Cir. 2009), *citing Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002).  The Rehabilitation Act, which prohibits discrimination

A, a plaintiff must allege that she has a physical or mental impairment.  § 12102(2)(A); 29 C.F.R. § 1630.2(g).

Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity.  *Chevron Phillips,* 570 F.3d at 614, *citing Toyota Motor*, 534 U.S. at 195. Moreover a plaintiff must have more than a diagnosis of an impairment to prove she has a disability under the statute; those "claiming the act's protection" must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999).  *See also Toyota Motor*, 534 U.S. at 198 ("an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's lives.  The impairment impact must also be permanent or long term.").  An "impairment" does not include "'transitory illnesses which have no permanent effect on the person's health.'"  *de la Torres v. Bolger*, 781 F.2d 1134, 1137 (5th Cir. 1986), *citing Stevens v. Stubbs*, 576 F. Supp.

---

based on disability by recipients of federal funds, is a precursor to the ADA on which Congress relied in drafting the ADA and about which Congress specified, "Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied under Title V of The Rehabilitation Act of 1973 (29 U.S.C. §§ 790 *et seq.*) or the regulations issued by Federal agencies pursuant to such title." *Chevron Phillips*, 570 F.3d at 614 n.5.

1409, 1414 (N.D. Ga. 1983). *See also Evans v. City of Dallas*, 861 F.2d 846, 852 (5th Cir. 1988)(the Act "contemplates an impairment of a continuing nature."); *Van Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995)(Intermittent, episodic impairments are not disabilities), *citing* 29 C.F.R. pt. 1630 app., § 1620.2j ("[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.  Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza.").

The implementing regulations in § 1630.2(i) provide a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking."  29 C.F.R. § 1630.2(i); *id.*  Moreover, "to be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform or to be significantly restricted in the ability to perform it." *Id.*, *citing* 29 C.F.R. § 1630.2(j)(1).  "Substantially limits" creates "a demanding standard" to qualify as disabled. *Toyota Motor*, 534 U.S. at 193. In deciding whether a person is "substantially limited" in a major life activity, the EEOC advises that courts should consider: '(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or

long term impact, or the expected permanent or long term impact of or resulting from the impairment.'"  *Id.* at 614-15, *citing* 29 C.F.R. § 1630.2(j).

Moreover, under 29 C.F.R. § 1630.2(j)(3)(i), relating to the life activity of working, "[S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See Hileman v. City of Dallas, Texas*, 115 F.3d 352, 353 (5th Cir. 1997); *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 597 (6th Cir. 1999)("The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.").  "[W]hether an individual is disabled under the ADA [or Rehabilitation Act]. . . remains an individualized inquiry." *Chevron Phillips*, 570 F.3d at 620.

The Fifth Circuit has recognized a cause of action for hostile work environment based on disability discrimination under the ADA, and thus presumably also under the Rehabilitation Act, modeled after a similar claim under Title VII.  *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 232-35 (5th Cir. 2001); *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 509 (5th Cir. 2003), *cert. denied*, 540 U.S. 815 (2003).  To prevail on

such a claim the plaintiff must show "(1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Id.* at 235-36; *id.* at 509.   To be actionable the "disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers*, 247 F.3d at 236, *citing McConathy v. Dr. Pepper/Seven-Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998).   In determining if the work environment is harassing, the court should consider all of the evidence, including "'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Flowers*, 247 F.3d at 236, *quoting Shepherd v. Comptroller of Public Accounts*, 163 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999).

### Plaintiff's Factual Allegations

Plaintiff claims she was discriminated against on the basis of her disability when she (1) was sent a letter of warning on August 4, 2005; (2) was placed in non-pay status ("put off the clock") on August 15, 2005; and (3) was given a seven-day suspension on

-13-

October 21, 2005.

The Court summarizes in chronological order the factual allegations, gleaned from the complaint, Plaintiff's deposition (Ex. A to #16), and other summary judgment evidence.

Plaintiff has been employed for almost twenty-seven years as a clerk by the United States Postal Service. Dep. at 4, ll. 21-23. Ex. to #16.   Her claims arise out of alleged discriminatory incidents involving herself and her head supervisor, Dorothy Demouy ("Demouy"), from May 18, 2005 through October 2005; during that time Plaintiff was on leave (and away from workplace and Demouy) from August 25 to November 2nd.

Demouy was in charge of making out employee schedules, and on May 18th, in error Demouy scheduled three clerks for work who had the day off, causing other clerks to be delayed in getting to their work areas and getting their equipment ready until Demouy corrected the problem.   One of the employees, Ms. Laws, complained that Demouy made such mistakes all the time.   Plaintiff told Laws, "that's not our job to do the scheduling. . . . That's her [Demouy's] job."   Demouy "got angry and hollered at me."   A manager, Mr. Walker, overheard and told Demouy that Plaintiff was right.  Dep. at 32-33.  Plaintiff complains that from that day on, Demouy held a "grudge" against her and discriminated against her

because of what she said during this incident.[5]

On August 4, 2005 Plaintiff received a Letter of Warning charging her with improper conduct and failure to follow instructions on May 16th. On May 16th, Plaintiff had been assigned to "throw-offs" in the caller service section of the box unit. The letter states that after looking at the assignment sheet, Plaintiff stated loudly, "you are supposed to rotate. I'm not supposed to be throwing off. I'm not doing it." Plaintiff insists she did not refuse to do the assignment, but that she objected that she was supposed to be rotated because she had been doing that strenuous job, lifting tubs loaded with mail, for the last month and that she wanted to see a union steward. She explained that the employees had been having weekly talk meetings informing them that jobs should be rotated. She asked Denise Johnson ("Johnson"), her immediate supervisor under Demouy, to get Plaintiff's assignment changed because her back was sore from lifting heavy tubs, but Johnson said she would have to discuss it with Demouy. The next day Plaintiff was still assigned to throw-offs, but other clerks

---

[5] During her deposition, Plaintiff testified to another incident when she filled out a leave slip requesting a three-day leave. She was about to hand it to Demouy when Demouy said "You can't be off," without even looking at the slip. Denise Johnson, a supervisor who worked under Demouy, was sitting there, and took her slip. Johnson cam back and said there was an opening for her leave. Plaintiff appears to have confused her dates because she states the leave was for March of 2005, but also states "there was something because of that first incident, she didn't like that because the head manager came and told her, you know, behind what I said." Dep. at 63-65.

were being rotated.   When Plaintiff came back later that day,
Demouy was there with a schedule, but it still had Plaintiff
assigned to throw-offs.   She testified that she said, "Ms. Demouy,
it's time for you to rotate me. . . . Could you please give me an
MDO and a union steward?"   Demouy refused.   Plaintiff's co-worker,
Mr. Banzon, then offered, "Ms. Demouy, I'll do throw-offs.   I can
do throw-offs."   Ms. Demouy purportedly responded, "You not going
to do throw-offs.   Ms. Mason going to do throw-offs."   Plaintiff
went to the throw-off area and began sorting the mail.   Demouy came
to her and ordered her to come to Demouy's office immediately and
contacted a union stewardess named Maria.   A week later Maria told
Plaintiff that Demouy never got back with her.   Subsequently
Plaintiff received the Letter of Warning.[6]   Dep. at 26-32.

On August 14-15th, Plaintiff was training for a job called
Oils dispatch involving separation of mail for four or five oil
companies.   On the second day Plaintiff believed that she had not
gotten adequate training because Demouy had a "grudge" against her.
Demouy accused Plaintiff of putting the "directs" in the wrong
carrier dispatch and then missing the correct dispatch time.[7]
Demouy then asked her if she needed more training, and Plaintiff
answered yes.   Demouy told Plaintiff to read the dispatch sheet,

---

[6] All referenced documents are included in the summary
judgment evidence.

[7] Plaintiff maintains this accusation was not true.
Deposition at 81.

which Plaintiff states was incorrect, and walked off.  After Demouy
left, the trainer, John Jenkins, told Plaintiff that Demouy had
ordered him to stop training Plaintiff.   Plaintiff asserts that
Jenkins had trained other clerks for 3-4 days.   Demouy sent
Johnson twice to ask Plaintiff to come to Demouy's office.  Demouy
and Johnson then came to Plaintiff, and Demouy told Plaintiff that
if Plaintiff refused to come, Demouy would have to get security to
"put her off the clock."  Plaintiff testified that she refused to
go because she had asked for a union stewardess to represent her,
but that Demouy insisted that Plaintiff did not need one.  Demouy
then demanded Plaintiff's badge, which Plaintiff initially did not
give to Demouy, called security, put Plaintiff "off the clock" for
the rest of her shift, purportedly brushed against Plaintiff or
bumped her shoulder, and told her to report back to duty on August
18th.  Dep. at 35-44.[8]

     On August 18th Plaintiff reported back to duty.  Plaintiff,
union stewardess Fay Morris, Demouy, and supervisor Ms. Cheung met
in Demouy's office for a pre-disciplinary interview.  Demouy gave
Plaintiff a leave-without-pay slip and zero tolerance policy
paperwork informing her about rules and regulations.  Plaintiff was
asked to sign the former and was told that she was being taken off
the clock without pay for seven days, pending an investigation of

---

     [8] Demouy's account of what occurred that day, as reported in
the letter of suspension of Oct. 4th, differs from Plaintiff's
allegations in her deposition.

the events on August 15th.  Plaintiff filled out the form, signed
it, and walked off.  She had to turn in her badge and was escorted
out of the building.  During her deposition Plaintiff indicated
that Demouy's "grudge" against her was "building over time" and
"kind of came to a head on the 18th."  Dep. at 44-48.

No one disputes that the first notice the Postal Service had
of Plaintiff's mental stress condition occurred on August 25th.
Plaintiff returned to work on the instructions of her union
president, Priscilla Vogel.  When Demouy came and stood near her,
Plaintiff became agitated, felt nauseated, and asked to see the
nurse.  The nurse found her to be hysterical and sent her to the
Employee Assistance Program ("EAP") for counseling.  Plaintiff went
home and then to see her personal physician, Dr. Alex Su, who
diagnosed Plaintiff as having "mood issues" that prevented her from
"focusing and interacting with others."  Dr. Su stated that
Plaintiff was unable to work for a month.  Dr. Su also filed out a
duty status report that cited "mental stress from supervisor" and
indicated a diagnosis of depression.  The Postal Service received
Dr. Su's report on August 26, 2005.  Plaintiff was placed on leave
under the Family Medical Leave Act ("FMLA") from August 26th to
September 25th; that leave was then extended through November 1,
2005.  At her deposition Plaintiff testified that she was depressed
because of the way Demouy was treating her; she also agreed that

her "problem was with Ms. Demouy."  Dep. at 49-57.[9]

On October 4, 2005, while Plaintiff was out on sick leave, a letter of suspension for seven days, starting October 21, was sent to her relating to the events that occurred in August and her walking "off the clock" without permission.

Plaintiff returned to work on November 2nd.  Demouy was not there and was no longer her supervisor.  Plaintiff conceded that she had no more problems after Demouy left.  Dep. at 23.

Regarding any requested accommodation for her illness, Plaintiff testified that she did not ask the Postal Service to change her job, which she loved.  She did ask not to work for Demouy, to have a different supervisor.  Dep. at 60-62.

When asked why she felt she was being discriminated against by Demouy, Plaintiff responded,

> . . . I believe it's because of some incidences that took place concerning Ms. Demouy, the way she made mistakes and I was involved in it.  And I had the correct--I told corrections about it.  And I feel that Ms. Demouy hold a grudge against that--against me.
> I feels that she falsified--I don't--I guess I could say it that way.  She falsified things that I did that . . . wasn't true, some incidents that she said in the suspension letter in one letter that she said wasn't true.  I feel that she would--wouldn't listen, didn't have--she didn't want to listen to anything I had to say.
> She refused me my rights of a union stewardess to be

---

[9] During her deposition, Plaintiff testified, "I took that leave because I feel like I was being harassed and I was being picked on and I was stressed and nauseated and nervous.  I just felt funny working around this supervisor [Demouy] because during the time that happened, I was sent to the nurse's office.  I had to be sent to the nurse's office."  Dep. at 7-8.

in my presence.  She brushed up against me--she bumped me
and caused me to be frightened of working around her
because I felt like she bumped me in order to intimidate
and agitate me.  I feel that she put me off the clock
twice without reasoning--proper reasoning.

Dep. at 79-80.

When asked how Demouy treated Plaintiff differently from other
similarly situated employees, she listed as examples that Demouy
rotated other employees but kept her on throw-offs, that she
permitted others to have longer training time with John Jenkins,
and that Demouy falsified a catalogue book of couriers' signatures
that got Plaintiff into trouble.  Plaintiff maintains that she did
nothing wrong and that she felt Demouy was trying to get her
terminated.

### Defendant's Motion for Summary Judgment (#16)

Defendant contends that Plaintiff has not and cannot make a
*prima facie* case under the Rehabilitation Act and her claims must
be dismissed because (1) she is not disabled under the terms of the
Rehabilitation Act because her alleged inability to work under the
supervision of one particular supervisor does not establish a *prima
facie* case of disability discrimination; and (2) she cannot prove
that the Postal Service took an adverse action against her because
of any disability or that she ever sought a reasonable
accommodation.

Plaintiff's deposition demonstrates that her suit arises out
of a personality dispute between herself and Demouy, or a "grudge"

-20-

held by Demouy against Plaintiff.   It does not involve discrimination based on a disability.   Plaintiff only sought medical attention after the events serving as the basis of this action occurred, and she never advised Demouy or the Postal Service of her need of any type of accommodation before being disciplined for her behavior.   The gravamen of her complaint is that she was unable to work under the supervision of one particular supervisor. Such a claim does not substantially limit a major life activity and, therefore, is not a physical or mental impairment as defined under the ADA or the Rehabilitation Act.   A physical or mental impairment that only affects the claimant's ability to engage in a narrow range of jobs or one particular job "does not substantially limit one or more major life activities." *Hileman v. City of Dallas, Texas*, 115 F.3d 352, 353 (5th Cir. 1997).

Nor can Plaintiff show that she has a record of disability or is regarded as being disabled.   A "record" of impairment means the claimant has a history of, or has been misclassified as having, a mental or physical impairment that "substantially limits one or more major life activities." *Hileman*, 115 F.3d at 353.   To show that one is "regarded as" disabled, a plaintiff must demonstrate that her employer perceived her as substantially limited from a broad range of jobs. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995).   Plaintiff has failed to produce any evidence of such a perception by Demouy or any of her other supervisors at

-21-

the Postal Service.   Moreover today she continues to do her job as a clerk.

Nor did the Postal Service take an adverse action against Mason because of her disability.   Discriminating against an employee because of a grudge is not prohibited by the Rehabilitation Act.   During her deposition Plaintiff testified at length that Demouy's alleged mistreatment of Plaintiff was the result of a workplace incident:

> Q.  Why do you think [Demouy] singled you out?  Does she
>     just not like you?
> A.  No, that wasn't it.
> Q.  Okay.
> A.  I don't think that was it.  I feel it was an incident
>     that took place on the workroom floor and I believe
>     she felt something against me because of what was
>     said.
> Q.  So you think it was an--some interaction that you-all
>     had?
> A.  Yeah, we had.
> Q.  Okay.  That caused her to not like you?
> A.  Yes.
> Q.  And that's the reason she discriminated against you?
> A.  Yes.

Dep. at 10-11.  Plaintiff went on to identify as the point at which the "grudge" started the incident where Demouy erroneously scheduled three clerks who were off duty and Plaintiff said it was Demouy's job to do it, overheard and reiterated by manager Mr. Walker.

Significantly Plaintiff did not seek medical attention for, and her mental condition was not diagnosed, until August 25, 2005, after all the events made the basis of this case already occurred.

Although the Notice of Suspension issued on October 4, 2005, it was based on events that occurred from August 15-25, 2005, before Plaintiff announced she felt very ill and was sent to the nurse. Defendant argues it could not discriminate against Plaintiff based on a disability that was not yet diagnosed[10] and for which no notice had been given.

Nor did Plaintiff request a reasonable accommodation of any disability from the Postal Service. "Where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations and to suggest reasonable accommodations." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Dr. Su's medical certification in support of her request for leave under the FMLA does not make any reference to assigning her to another supervisor, so Plaintiff bore the burden of identifying her disability and suggesting a reasonable accommodation. If Plaintiff was disabled within the

---

[10] This conclusion needs to be qualified. "The ADA requires employers to accommodate limitations, not disabilities. 'The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment a person has, but rather on the effect of that impairment on the life of the individual.'" *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 265 (5th Cir. 1999)(Wiener, J. dissenting)(*quoting* 29 C.F.R. § 1630.2(j), App. (1995)), *rehearing en banc*, 213 F.3d 209 (5th Cir. 2000, *cert. denied*, 531 U.S. 958 (2000).

meaning of the statute, there is no evidence that the Postal Service took an adverse action against her because of that disability or otherwise denied her a reasonable accommodation.

### Plaintiff's Response (#20 and #22)

Plaintiff insists that she has adequately pleaded a claim under Title VII. This Court disagrees and dismisses her Title VII claim as a matter of law for the reasons indicated *supra*.

Plaintiff also claims that she can establish a *prima facie* case of disability under the Rehabilitation Act. She vaguely and conclusorily maintains that she has a continuing stress-related "disability." She argues that her major life activities of working and sleeping were substantially limited by her mental stress. She claims, but provides no evidence, that she was disabled under the terms of ths statute because the Postal Service was aware of her disability but failed and refused to grant her the reasonable and obviously needed accommodation of not being supervised by Demouy. She asserts, "The activities of Demouy perpetrated on Mason actually violated the Postal Zero Tolerance Rules and Regulations, especially the deliberately body slamming episode," which she had previously described a "brush" against or "bump" on the shoulder. Plaintiff contends that her "inability to work under Demouy's supervision is a disability under the Rehabilitation Act, and the Postal Service took an adverse action against her because of it." She continues in hyperbole, "No investigation was done of Demouy,

and she was allowed to continue her reign of terror over Mason as she pleased."

### Defendant's Reply and Motion to Strike (#22)

In reply, Defendant first points out that Plaintiff concedes that the basis for her discrimination claim is a "grudge" related to interaction with Demouy that "set up a line of progressive discipline to have her terminated." #20 or 22 at II., ¶¶ 7,9. Defendant argues that the grudge was not related to any disability alleged by Plaintiff, that she has alleged no facts to support a finding that she was discriminated against because of her disability, and that Defendant is entitled to summary judgment dismissing her claims.

In addition Defendant moves to strike exhibits "B"-"M" as incompetent summary judgment evidence. Although purporting to be witness statements, none of them is made under oath or notarized, or indicates that it was made under penalty of perjury or that the statements contained therein are true and correct. *Massay v. Federal Correctional Institution--Texarkana*, 243 Fed. Appx. 871, 874 (5th Cir. 2007), *citing Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir. 1988); 28 U.S.C. § 1746.

### Court's Decision

The Court agrees with Defendants that Exhibits "B"-"M" to #22 are incompetent summary judgment evidence and grants the motion to strike.

-25-

Furthermore, the Court concludes that summary judgment should be granted in favor of Defendant because Plaintiff fails to state, no less to offer evidence, that Plaintiff had a "disability" within the meaning of the Rehabilitation Act or that the Postal Service knew or should have known of her disability before August 25th and failed to reasonable accommodate her.  Thus she fails to make *prima facie* case of violations of the Rehabilitation Act.  Moreover, even if Exhibits "B"-"M" to #22 were not stricken by the Court, they would not cure this deficiency.

Plaintiff has put the proverbial cart before the horse here. From Plaintiff's own rendition of events, Plaintiff's alleged mental "disability" and resulting effects on her major lifetime activities of working and sleeping (stress, loss of appetite, sleeplessness, nervousness and fear) arose as the result of a series of clashes with Demouy; Demouy did not first discriminate against her because of her mental condition.  Her mental stress does not qualify as an impairment that substantially limited one or more of Plaintiff's major lifetime activities.  First, it was not permanent, but of short duration, lasting only a few weeks, and it apparently disappeared once she returned to work in November 2005 and was no longer under the supervision of Demouy.

Second, Plaintiff claims that her mental stress substantially limited her major lifetime activities of sleeping and working. Recently in *Carter v. Ridge*, 255 Fed. Appx. 826, 830, No. 07-20275,

2007 WL 4104349, *3 (5th Cir. Nov. 19, 2007), a panel of the Fifth Circuit opined,

> The Fifth Circuit has not yet considered whether sleeping constitutes a major life activity. However, even assuming, arguendo, that it is, [plaintiff] fails to raise a genuine issue of material fact as to whether his impairment substantially limits his ability to sleep. An impairment substantially limits a major life activity if it makes an individual completely unable to perform the activity or if it "significantly restricts the duration, manner, or condition under which an individual can perform a major life activity as compared to the average person in the general population's ability to perform the same major life activity." 29 C.F.R. § 1630.2. Applying these guidelines to sleeping, the Eighth Circuit has said: "[d]ifficulty sleeping is extremely widespread, and plaintiff must present evidence beyond vague assertions of a rough night's sleep or a need for medication, that his affliction is worse than that suffered by a large portion of the nation's adult population." *Nadler v. Harvey*, [2007 WL 2404705, at *6 (11th Cir. Aug. 24, 2007)].

*Id., citing Nuzum v. Osark Auto. Distribs.*, 432 F.3d 839, 848 (8th Cir. 2005)(finding that sleeping two and a half hours at a time and five hours a night is not substantially impaired), and *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001)("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population." Even if the Fifth Circuit were to recognize sleep as a major life activity, Plaintiff here has not alleged any specific facts nor presented any evidence, no less sufficient evidence, to raise a genuine issue of material fact as to whether her mental stress substantially limited her sleeping. *Carter v. Ridge*, 2007 WL 4104349, *3.

As for the major life activity of working, Plaintiff has failed to demonstrate that her impairment substantially limited her employment generally, that she was "significantly restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). Instead, she at most has shown that she suffered a mental collapse at her particular job with the Postal Service when a specific supervisor, Demouy, was present and was allegedly harassing her from May through August 2005. Even then, according to her allegations, Demouy was not harassing Plaintiff because of her mental stress, which developed gradually and only in response to Demouy's treatment, but purportedly because Demouy had a "grudge" against Plaintiff for criticizing Demouy in front of others when Demouy failed to schedule the clerks' job assignments correctly. Plaintiff did not show that she was unable to work in other positions in the Postal Service or other jobs outside the Postal Service.

Plaintiff also does not allege or demonstrate that she had a record of impairment or was "regarded as" having a physical or mental impairment by the Postal Service.

Nor does Plaintiff raise a genuine issue of material fact for trial that her employer failed to make a reasonable accommodation for a mental disability that was known or should have been known. The first evidence in the record of notice to the Postal Service

regarding Plaintiff's mental stress problem was on August 25, 2005, when Plaintiff stated that she felt ill, was sent to the nurse who recommended counseling, and saw her personal physician, who sent a report to her employer stating that Plaintiff was having "mood issues" that prevented her from "focusing and interacting with others" and that she was unable to work for a month.   Dr. Su also filed out a duty status report that cited "mental stress from supervisor" and indicated a diagnosis of depression.  Because all of Demouy's alleged discrimination against Plaintiff occurred before the Postal Service first learned of Plaintiff's problems, Defendant cannot be liable for a failure to accommodate.  Indeed as soon as it was informed of Plaintiff's mental stress on August 25th, the Postal Service took prompt remedial action in arranging for Plaintiff to take leave under the FMLA and later extended that leave.  Since returning to work for the Postal Service in November 2005, Plaintiff has not complained of disability discrimination.

Moreover, because Plaintiff has not made a *prima facie* case of disability discrimination against herself and has not alleged such discrimination against any co-workers, her claim for a hostile work environment must also be dismissed.  As noted, she has failed to show that the harassment she complains of was based on her alleged "disability," which does not meet the requirements for a disability under the act, or that the Postal Service knew of her mental stress or the harassment before August 25th and failed to take remedial

action.

Accordingly, for the reasons stated in this Opinion and Order, the Court

ORDERS that Defendant's motion to strike (#24) is GRANTED. The Court further

ORDERS that Defendant's motion for summary judgment is GRANTED and all of Plaintiff's claims are DISMISSED with prejudice.  A final judgment shall issue by separate order.

**SIGNED** at Houston, Texas, this 15th day of November , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE